Hillsborough, }
March 6, 1928. }

EMMA SUNDEEN *v.* JAMES A. ROGERS *& a.*

*Frederic E. St. Cyr* (by brief and orally), for the plaintiff.

*Thomas J. Bois* and *Thorp & Branch* (*Mr. Branch* orally), for the defendants.

PEASLEE, C. J. This proceeding is under Public Laws, chapter 42, sections 48–66, known as the zoning act. The plaintiff, alleging grievances in the action of the superintendent of buildings and the board of adjustment, filed her petition in the superior court, under the provisions of section 61. Upon this petition the court found certain facts, and ordered that the bill be dismissed. The statute directs that the court shall "make such order approving, modifying or setting aside the decision appealed from as justice may require, and may make a new order as a substitute for the order of the board." *Ib.*, s. 62. While the order dismissing the bill does not conform to the statutory procedure, it is, in substance, designed to be an approval of the order appealed from, and is so treated.

The proceeding in the superior court was had for the purpose of raising certain questions as to the validity of the statute and the ordinance. There appears to be no claim that the action taken by

the board was improper, if the legislation under which it acted is valid.

The zoning ordinance of the city of Manchester provides that in certain described residential districts auxiliary buildings shall be erected on the rear half of the lot only. The plaintiff's position is that this regulation should be set aside because of two distinct claims of invalidity. I. It is alleged to be an unconstitutional infringement upon property rights. II. The provision for granting variances is said to furnish no sufficient guide for action by the board of adjustment.

I. Two grounds are relied upon as sufficient for declaring the general purpose of the ordinance to be beyond the legislative power. It is said that a prohibition of the erection of a building within a certain distance from the street line amounts to a taking of property, as distinguished from a regulation of use, and that therefore compensation must be made. The other ground is that the reason for such a limitation of use is purely æsthetic, having no relation to the elements heretofore recognized as furnishing ground for the exercise of regulatory power, and that the legislature cannot undertake to control the use of property so far as mere matters of good taste are concerned.

Ordinances having in view the general purpose to regulate the erection and occupation of buildings in thickly settled communities have become common in recent years, and there are many decisions dealing with the limitations which must be observed in such legislation. So far as the question of infringement upon the guaranties in the federal constitution is concerned, it is settled that these so-called set-back provisions are valid.

In *Euclid* v. *Company*, 272 U. S. 365, the general subject of zoning ordinances received full consideration, and the conclusion favorable to their validity was announced. In *Gorieb* v. *Fox*, 274 U. S. 603, a set-back ordinance was involved. In sustaining it the court said: "It is hard to see any controlling difference between regulations which require the lot-owner to leave open areas at the sides and rear of his house and limit the extent of his use of the space above his lot and a regulation which requires him to set his building a reasonable distance back from the street. Each interferes in the same way, if not to the same extent, with the owner's general right of dominion over his property. All rest for their justification upon the same reasons which have arisen in recent times as a result of the great increase and concentration of population in urban communi-

ties and the vast changes in the extent and complexity of the problems of modern city life. *Euclid* v. *Company, supra, p.* 386." *Ib.,* 608.

Continuing as to the state of the law as held in the state courts, the opinion reads:

"The courts, it is true as already suggested, are in disagreement as to the validity of set-back requirements. An examination discloses that one group of decisions holds that such requirements have no rational relation to the public safety, health, morals, or general welfare, and cannot be sustained as a legitimate exercise of the police power. The view of the other group is exactly to the contrary. In the *Euclid* case, upon a review of the decisions, we rejected the basic reasons upon which the decisions in the first group depend and accepted those upon which rests the opposite view of the other group. Nothing we think is to be gained by a similar review in respect of the specific phase of the general question which is presented here. As to that, it is enough to say that, in consonance with the principles announced in the *Euclid* case, and upon what, in the light of present day conditions, seems to be the better reason, we sustain the view put forward by the latter group of decisions, of which the following are representative: *Windsor* v. *Whitney,* 95 Conn. 357; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288, 303; *Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 229 N. Y. 313." *Ib.,* 609, 610.

The cases upon the subject are collected and reviewed in 43 C. J. 334 *et seq.*

The weight of authority is clearly for the validity of these ordinances. It seems to us that the better reasoning is on the same side. Earlier decisions, dealing with different conditions, are not of persuasive value. The constitutional principle involved has not changed. The legal question remains constant. Is the provision a reasonable law for the promotion of the general or public welfare? These general terms have already been held to include such regulations as are calculated to promote the public health, safety, or morals, the comfort of the community, or the protection of property. *State* v. *White,* 64 N. H. 48; *State* v. *Campbell,* 64 N. H. 402. But although the legal test is always the same, it is manifest that its application to different conditions may lead to different results. The conclusion that conditions have not changed sufficiently to permit the making of these restrictions upon the use of property fails to give due weight to present day facts.

"It is undoubtedly true that many acts that are sustained today would not have been sustained a hundred years ago; but that proves

nothing except that industrial conditions, and political theories as well, are constantly changing. It has no tendency to sustain the contention that the constitution does not mean the same today that it meant to the men who framed it, . . . They knew conditions were constantly changing, and that laws which were well adapted to promote the welfare of the people at that time might become wholly inadequate for that purpose. . . . They knew that the reasonableness of a law depends on the situation as it exists at the time the law is passed — not on the situation as it existed when the constitution was adopted." *Carter* v. *Craig*, 77 N. H. 200, 206, 207.

No sufficient reason has been found for adopting the narrower rule of legislative power. While it is true that the view that the individual should be protected from encroachment upon his rights by the mere will of the majority has always been maintained here (*Williams* v. *State*, 81 N. H. 341, 352), it is equally true that the police power has uniformly been treated as of broad application; and the rule that, where any fair reason could be assigned for bringing legislation within its purview, the question of justice was for the legislature alone, has been consistently followed. *State* v. *Griffin*, 69 N. H. 1, 22 *et seq.*, and cases cited; *Barber* v. *School Board*, 82 N. H. 426, 428, and cases cited. "Unless a court can clearly see that a law purporting to have been enacted to protect the public health and public morals has no relation to those objects, it cannot set it aside as unconstitutional and void." *State* v. *Roberts*, 74 N. H. 476, 478.

The claim that the ordinance amounts to a taking of the plaintiff's property is without substantial basis. "It is not an appropriation of the property to a public use, but the restraint of an injurious private use by the owner." *Commonwealth* v. *Alger*, 7 Cush. 53, 86. "Any conceivable statute enacted under the police power, and regulating the use of property, must necessarily affect injuriously individual rights; but in no instance, so far as known, has it been declared by a court of last resort that persons whose interests are so affected are entitled to compensation. Under the law of eminent domain, no one is entitled to compensation for injuries, however serious they may be, caused by public improvements, if no part of his lands or property is taken therefor." *State* v. *Griffin*, 69 N. H. 1, 26.

The case of *Bigelow* v. *Whitcomb*, 72 N. H. 473, is relied upon by the plaintiff to show that the regulation amounted to a taking of her property. In that case there was an attempt to deprive the abutting owner of his rights in trees growing within the limits of a country highway, and to devote the trees to purposes of shade and ornament,

against his wish and without compensation. It is plain that such action constituted a taking of the abutter's property and an application of it to public use. It did not stop at reasonable regulation of his use. It is true that in a certain sense the regulation of the location of the plaintiff's buildings takes from her property right. But that is true of all regulation of use. The plaintiff's argument is simply a denial of the constitutional grant of power to enact "all manner of wholesome and reasonable" laws "for the benefit and welfare of this state." Const., Pt. II, *Art.* 5. It ignores the fundamental principle that "persons and property are subjected to such restraints and burdens as are reasonably necessary to secure the general comfort, health, and prosperity." *State* v. *White*, 64 N. H. 48, 50.

The regulation was one which might lawfully be made, if the end sought to be achieved thereby has any substantial relation to any of the objects comprehended within the term "the police power." Upon this feature of the case it is urged that the object sought is purely an æsthetic one, and that such an end, however desirable in fact, cannot be made the ground for the exercise of this power. Just what is meant by the use of the term æsthetic is not entirely clear; but apparently it is intended to designate thereby matters which are evident to sight only, as distinguished from those discerned through smell or hearing. No very conclusive argument can be advanced to show that the line of legal right on the one hand and liability on the other should be drawn at this place. But most legal limitations are matters of degree, and the supposed rule is not to be condemned for that reason alone. It is not necessary to consider this aspect of the question whether modern conditions have made inappropriate the application of constitutional principles which was reasonable and proper when living conditions were simpler.

The limitations of the police power have been declared with great caution, with the often repeated statement that a general definition of the power is impracticable and that the boundaries are to be determined by a consideration of specific instances as they are presented. Whether the catalogue of terms now commonly used to indicate the objects included within its scope includes all that are covered by the constitutional grant of power to enact reasonable laws for the general welfare, whether present or future conditions may lead to the conclusion that a purely æsthetic regulation of the use of property is both reasonable and sufficiently promotive of the public welfare, are questions upon which no opinion is expressed.

Assuming that things or uses of property which are offensive to the eye only cannot be regulated under the police power, the ordinance is not invalid. The provision in question here required that auxiliary buildings, including garages, stables and the like, be placed upon the rear half of the lot. It is a matter of common knowledge that this is the way such buildings are usually placed. It is evident that such an arrangement may make for better conditions of light and air, and perhaps tends to reduce fire risks. It may also be thought to promote the safety of public travel over what it would be if a garage opened directly onto the street, thereby preventing a view of and from a car which was moving out to the highway. These considerations would justify the conclusion that the regulation was a reasonable one and that it would promote the public health and safety.

It is not a valid objection to a regulation which can be sustained upon these grounds that it also has an æsthetic value. Nor would a showing that such æsthetic quality was a part of the inducement for making the regulation render it void. Even in those jurisdictions where the law is that æsthetic value alone cannot be made the basis for regulation, it is held that where other elements are present and justify the regulation under the police power, the æsthetic considerations may be taken into account in determining whether the power shall be exercised. *Welch* v. *Swasey*, 193 Mass. 364; s. c. 214 U. S. 91; *Ayer* v. *Comm'rs*, 242 Mass. 30; *Wulfsohn* v. *Burden*, 241 N. Y. 288.

Other objections to the reasonableness of the ordinance are advanced. Before the adoption of these provisions, the city had in force a building code and fire protection regulations. Neither of these would be violated by the building the plaintiff proposes to erect. It is argued that these ordinances establish the reasonableness of her proposed use and that therefore it cannot be found that an ordinance forbidding such use is reasonable. The evident answer to this position is that the former ordinances did not settle the issue of reasonable use for all time, nor estop the city from enacting a different rule. In so far as the zoning ordinance varies the terms of the earlier ones, it presents the common situation of legislation which has been repealed. *Norcross* v. *Board of Appeal*, 255 Mass. 177.

Attention is called to *Lane* v. *Concord*, 70 N. H. 485, and *True* v. *McAlpine*, 81 N. H. 314, as holding that certain uses of property could not be found to be so unreasonable as to create a nuisance abatable by legal process. From this it is argued that no more could

the uses be prohibited through the exercise of the police power. The use not being unreasonable under the common law, it is said that a legislative prohibition of it cannot be reasonable.

The argument fails to take into consideration the difference between administering law and making it. "The instances are numerous in which acts and things not nuisances at common law, and in themselves harmless and inoffensive or even beneficial, and only liable to become offensive to the public health or comfort by improper use, have been by statute declared nuisances. Such legislation, whenever brought in question, has been sustained by the courts." *State* v. *Griffin*, 69 N. H. 1, 27.

In the proceeding to abate a nuisance, the issue is one of present actionable wrong done to one's neighbor. In considering the limitation of legislative power, the question is whether there is a tendency to cause injury to the public health, etc. In the solution of the latter problem the law of nuisances is not controlling. *Euclid* v. *Company*, 272 U. S. 365; *Reinman* v. *Little Rock*, 237 U. S. 171; *Hadacheck* v. *Sabastian*, 239 U. S. 394.

II. Another objection urged against the provisions here involved is that they confer legislative powers upon the board of adjustment. The claim is that there are no sufficient limitations upon what the board may do in the way of granting or refusing variances from compliance with the terms of the ordinance.

The case of *Hanover* v. *Atkins*, 78 N. H. 308, is relied upon as authority for the position that the power to grant variances is too general and indefinite. But the power here given is well defined. Variances are to be granted when certain facts exist. The provision that the board of adjustment shall have power to authorize "such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship . . ." (P. L., c. 42, s. 60, par. III) means that when the designated facts are found it is the duty of the board to grant the variance. The board is made a tribunal to find the facts. The facts being found, the action to be taken thereon is prescribed by law.

In the *Atkins* case it was thought that the legislation (state and local) did not furnish any such certain guide for the conduct of the commissioners. The language of the opinion makes this clear. "It was not the intention of the legislature to vest in them arbitrary power to permit one man to do blacksmithing in the precinct and

to deny the right or privilege to another under similar circumstances. But that result would follow in the absence of any rule which they were bound to apply and enforce." *Ib.*, 310.

It is immaterial here whether the statute and the local ordinance involved in the *Atkins* case were or were not rightly interpreted. The legal conclusion there announced was applicable to the statutory provisions as there construed. But that case does not go to the extent of denying the right to confer power to decide questions of fact.

That the scope of that decision is so limited, is made certain by a later case. *Page* v. *Brooks*, 79 N. H. 70. In this case an ordinance required one desiring to erect a garage to furnish certain information to the city council, who would thereupon act upon the granting or refusal of a license. The fact that the licensing board could exercise a discretion in the matter was held not to render the ordinance invalid, since the discretion used must be a reasonable one. The ordinance was valid because it did not undertake to confer arbitrary power, but merely to provide for reasonable regulation.

As the statute here involved is plain and specific in its provisions, leaving nothing open to the mental processes of the board save the finding of the facts in the particular case, there is nothing upon which to base a claim that the board is vested with arbitrary power. Authority to grant a variance to one party and to deny it "to another under similar circumstances" is not conferred. "The provision was not intended as a grant of arbitrary power, but only as the imposition of a duty upon those officers, to be performed by an impartial exercise of a reasonable discretion. There can be no doubt of the legislature's power to delegate the duty to these officers." *State* v. *Cohen*, 73 N. H. 543, 547. See also *Hammond* v. *Board of Appeal*, 257 Mass. 446.

Complaint is also made because the board of adjustment has not established rules by which procedure before it is to be governed. In many respects, the matter is regulated by the statute, which provides for fixing a reasonable time for hearing, for notice to the parties and the public, for a decision within a reasonable time, and for the right of any party to appear. P. L., c. 42, s. 59.

Section 57 directs that the board shall provide by rule for taking an appeal to it from the decision of the superintendent "within a reasonable time." While this provision should be complied with, failure to do so has not harmed the plaintiff. She had her day in court, and there is no suggestion that she did not protect her rights

by the appeal which she took, or that she did not have a full and fair hearing. Under these circumstances she will not be heard to complain because the rights which she has exercised were not more definitely secured to her in advance. Moreover, it is stated in the agreed facts that "A legal hearing was duly held by said board."

The order of the board of adjustment should be approved.

*Exceptions overruled.*

BRANCH, J., did not sit: the others concurred.