Kerr's Appeal.

Argued September 26, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Harry S. Dunmire,* with him *R. T. M. McCready,* for appellants.—The front yard requirements of section 32 of the zoning ordinance of the City of Pittsburgh in conjunction with section 9, subsection 10 thereof (as defined in section 8, subsection 12b thereof), are unconstitutional, not being a reasonable exercise of the police power: White's App., 287 Pa. 259; Ward's App., 289 Pa. 458.

The Board of Adjustment under the zoning ordinance of the City of Pittsburgh abused its discretion in refusing appellants a permit to build the said garage at the proposed location on their lot: Junge's App., 89 Pa. Superior Ct. 543.

*Thomas M. Benner,* First Assistant City Solicitor, with him *Chas. A. Waldschmidt,* City Solicitor, for appellee.—The police power is not limited to regulations designed to promote public health, public morals, or public safety, or to the suppression of what is offensive, disorderly or unsanitary, but extends to so dealing with

conditions which exist as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity: Bacon v. Walker, 204 U. S. 311, 317, 318; Euclid Village v. Realty Co., 272 U. S. 335; Gorieb v. Fox, 274 U. S. 603; Junge's App., 89 Pa. Superior Ct. 543.

OPINION BY MR. JUSTICE WALLING, November 26, 1928:

This case is an outgrowth of the Pittsburgh Zoning Ordinance. In 1922, Albert W. Mendel laid out a plan of lots in Pittsburgh, called the Marshall Fields Plan, along the east side of which is Perrysville Avenue, sixty feet in width. To the west of the avenue and practically parallel therewith is Oak Park Road, of the width of twenty-five feet. A number of the lots including No. 21, extend from the avenue to the road, a distance of approximately one hundred and twenty-three feet. Of course, these lots have a frontage on both streets. The north end of Oak Park Road is a cul de sac, opposite which, and facing thereon for the width of fifty-five feet, is lot No. 21; on the opposite side of this end of the road is a piece of land reserved as a site for garages, to accommodate the occupants of the lots lying south of No. 21. The zoning ordinance here applicable was enacted in the early spring of 1927 and constitutes this locality "First Area District," providing that in such no building shall be erected at a less distance than thirty feet from the line of any street of the width of not less than twenty-five feet, which includes both the avenue and the road above mentioned. Shortly after the passage of this ordinance the appellants, Clyde C. Kerr and Marie E. Kerr, purchased lot No. 21 and commenced the erection of a duplex brick residence thereon, facing the avenue and thirty feet therefrom. They neglected, however, to apply to the bureau of public inspection for a permit until the dwelling was partially erected. The application when made asked also for a permit to erect a one-story double brick garage, twenty by twenty-one feet in

size, at a distance of five feet from the east line of Oak Park Road. The permit for the dwelling was granted, but that for the garage was refused on the ground that it did not set back thirty feet from the road as required by the ordinance. As the west end of the dwelling came within forty feet of the east line of the road, it could not be so located, for the garage was twenty feet in width; hence, the applicants appealed to the board of adjustment, who refused the permit, as did the court of common pleas, and from the latter they have brought this appeal.

A careful review of the record discloses no sufficient reason for our interference. Zoning statutes and ordinances, the outgrowth of the last twenty-five years, have resulted in much litigation and some conflicting decisions and even members of the same court have not always been of one opinion. It is now, however, very generally held that such regulations are valid, under the police power, wherever they substantially tend to promote the health, morals, safety or general welfare of the public. Speaking for the court, in White's App., 287 Pa. 259, Mr. Justice KEPHART says (p. 266): "There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper." This is quoted by the chief justice, speaking for the court, in Ward's App., 289 Pa. 258, 262, who adds: "Since the above quoted matter was written by us, the Supreme Court of the United States, in Euclid Village v. Ambler Realty Co., 47 Sup. Ct. R. 114, 119, has held that the mere fact that the effect of the general scheme of a zoning statute or ordinance may be to depreciate property values, is not a sufficient consideration to make it invalid as a whole, and that a particular provision under attack must in it-

self be clearly arbitrary and unreasonable and without substantial relation to public health, safety, morals or general welfare before it can be declared unconstitutional." That the effect of the zoning ordinance may be to depreciate the value of property will not render it invalid: Euclid Village v. Ambler Realty Co., supra; Ward's App., supra; Wulfsohn v. Burden, 241 N. Y. 288, 150 N. E. 120. In the very late case of Nectow v. City of Cambridge, 48 Sup. Ct. R. 445, the United States Supreme Court hold the zoning ordinance invalid on a finding of the master that it did not in any manner tend to promote the general welfare. But Mr. Justice SUTHERLAND, there speaking for the court, says: "We quite agree with the opinion expressed below that a court should not set aside the determination of public officers in such a matter unless it is clear that their action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'"

In the instant case, appellants' lot is an interior through one, not of great depth, and the ordinance requires such a set-back at each end and such yards on the sides of the dwelling as to leave but 37 per cent of the lot's surface upon which to build. This restriction would be clearly bad in a business section, but not necessarily so in one strictly residential. In the latter there is room for a difference of opinion; hence, it is a question for the city authorities. While a zoning ordinance cannot be sustained merely on æsthetic ground, that may be considered in connection with questions of general welfare. See Sundeen v. Rogers (N. H.), 141 Atl. 142. A set-back ordinance, however, based on the location of a certain percentage of buildings in the block, is arbitrary and void: White's App., supra; see also Eubank v. City of Richmond, 226 U. S. 137.

The set-back ordinance does not appropriate any of appellants' land, but merely limits the use to which it

may be applied. This is not a taking under the right of eminent domain. See White's App., supra; State v. Houghton, 213 N. W. 907; Thille v. Board of Public Works, 255 Pac. 294. In residential sections, set-back ordinances tend to promote public health, and comfort by the admission of light and air, also promote public safety, decreasing the fire hazard by enlarging the space between buildings and by facilitating the efforts of firemen to extinguish fires.

Set-back ordinances, under varying circumstances, have found judicial sanction. "As a general proposition, it is settled that the establishment of set-back lines is a lawful exercise of the police power. Upon this proposition there has never been any substantial conflict in the authorities": Weiss v. Guion, 17 Fed. (2d) 202, 204. See also Wulfsohn v. Burden, supra; Sundeen v. Rogers, supra; Slack v. Building Inspectors of Town of Wellesley (Mass.), 160 N. E. 285. So have ordinances limiting the location, height, etc., of apartment houses: Wulfsohn v. Burden, supra. Furthermore, ordinances excluding business houses from residential sections are generally sustained. See Ward's App., supra. Also, those limiting the erection and maintenance of billboards: St. Louis Poster Adv. Co. v. St. Louis, 249 U. S. 269. The questions are largely legislative, with which courts will only interfere to prevent an arbitrary abuse of power. See Bacon v. Walker, 204 U. S. 311; Lincoln Trust Co. v. Williams Building Corporation, 128 N. E. 209. So long as the restriction imposed has a substantial bearing on the health, safety, morals, or general welfare of the public, the courts will not condemn it.

There was statutory authority for the provision of the ordinance in question. Section 1 of the Act of March 31, 1927, P. L. 98, provides: "That for the purpose of promoting health, safety, morals or the general welfare of the community, cities of the second class are hereby empowered to regulate, restrict or determine, the height, number of stories and size of buildings and other struc-

tures, the percentage of lot that may be built upon, the size of yards, courts and other open spaces, the density of population, and the location, use and occupancy of buildings, structures and land for trade, industry, residence or other purposes."

While section 7 of the Act (P. L. 101) provides, inter alia, that the board of adjustment shall have power, "To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done." And section 54 of the zoning ordinance provides that, "The board may reverse or affirm wholly or partly, or may modify any order, requirement, decision or determination appealed from as in its opinion ought to be made in the premises. Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance, the board shall have the power in passing upon appeals to vary or modify any of the regulations or provisions of this ordinance in harmony with its general purpose and intent and in accordance with the general or specific rules herein contained so that the spirit of this ordinance shall be observed, the public health, the public safety and the general welfare secured and substantial justice done." Thereunder, appellants strenuously contend that the board's refusal to grant them the relief prayed for was such an abuse of discretion as calls for reversal. This is based on the ground that the proposed garage is to stand on the five-foot set-back provided in the original plot of the lots; that it will not stand in front of any dwelling erected or possible on the opposite side of Oak Park Road; that the latter street being thirty feet higher than Perrysville Avenue, renders the erection of a garage on any other part of the lot impracticable and that being at the end of the cul de sac the

objections that might otherwise be urged against it are untenable. While these and perhaps other circumstances peculiar to this lot, were proper for the board's consideration, we are not satisfied the conclusion reached was so manifestly wrong as to require reversal. The board was familiar with the surroundings and better able to judge whether this case should be made an exception under the discretionary power vested in it. The difficulties and hardships, which move the board of adjustment to depart from the strict letter of the ordinance, should be substantial and of compelling force: Junge's App. (No. 1), 89 Pa. Superior Ct. 543. Mere hardship will not invalidate a zoning ordinance. See State v. Christopher, 298 S. W. 720.

The general scope and validity of zoning ordinances have been so recently and fully considered by this court in White's Appeal and in Ward's Appeal, supra, that further elaboration seems unnecessary.

The order of the court of common pleas, dismissing the appeal from the board of adjustment, is affirmed at the cost of appellants.