Walnut and Quince Streets Corporation v. Mills et al.

*Walter Biddle Saul*, for plantiff.

*G. Coe Farrier*, Assistant City Solicitor, and *Samuel S. Herman*, for defendants.

MacNEILLE, J., May 15, 1930.—This matter was heard on a bill in equity filed by the Walnut and Quince Streets Corporation, owners of premises located at the southeast corner of Walnut and Quince Streets, in the City of

Philadelphia, upon which plaintiff has erected a theatre, known as the Forrest Theatre, asking for a restraining order directed against William B. Mills, Superintendant of the Department of Public Safety, John Frederick Lewis et al., constituting the Art Jury of the City of Philadelphia, and the City of Philadelphia, enjoining them from interfering with the completion, erection, maintenance or lighting of a marquise erected over the sidewalk in front of the premises referred to.

Upon presentation of the bill and supporting affidavits, the chancellor granted the preliminary injunction prayed for, fixing the security to be entered, and appointed a time for the preliminary hearing, which was held on May 2, 1928, and continued.

Under the preliminary order, the plaintiff was permitted to use and light the part of the marquise already erected, but not to finish or paint it. On March 2, 1929, the chancellor made an amended order, under which the police department was enjoined from interfering with the completion, painting or finishing of the marquise, without prejudice to the rights of the city or any parties to the bill.

The moving of the electrical sign complained of, as erected in violation of the city ordinance, to a position in compliance therewith, was ordered by the chancellor.

The material facts necessary for the adjudication of this controversy are not in dispute and are admitted in the pleadings. In the answer the defendants asked for affirmative relief, and to this a reply was filed by the plaintiff.

The chancellor makes the following

*Findings of fact:*

1. The plaintiff, the Walnut and Quince Streets Corporation, is a corporation organized and incorporated under and by virtue of the laws of the State of Pennsylvania, having its principal office and place of business in the City of Philadelphia.

2. The said corporation plaintiff is the owner of a plot of ground, situate at the southeast corner of Walnut and Quince Streets, public highways in Philadelphia, upon which is erected a theatre, known as the Forrest Theatre.

3. Before the erection of the theatre mentioned, the plans for its construction, including plans for the erection of a marquise or canopy over the sidewalk along the Walnut Street front of the theatre, were approved by the Department of Building Inspection of the City of Philadelphia, and a permit therefor was duly issued by the Department of Public Safety, Bureau of Building Inspection, and, in addition, a permit was issued by the Bureau of Highways for the erection of a marquise in accordance with the ordinances of council in such case made and provided, which permit was subject to the approval of the Art Jury of Philadelphia.

4. The marquise erected in front of the said theatre extends along the entire Walnut Street frontage of the building. It is built of steel girders and roofed with material other than the wire glass required by the rules of the Board of Highway Supervisors and the ordinance of City Council of Philadelphia.

5. On or about April 2, 1928, the plaintiff corporation submitted to the Art Jury of the City of Philadelphia its plans and design for the erection of the marquise in front of its theatre, which submission was referred to a committee of the Art Jury, which committee reported adversely on the submission, and that report was ratified and approved at a stated meeting of the Art Jury held on April 27, 1928, which action was duly communicated to the plaintiff.

6. On April 19, 1928, the city solicitor notified the plaintiff that the Art Jury had disapproved the design and location of the marquise in question and demanded the discontinuance of further work thereon and the removal of such parts of it as had already been erected.

7. Following the notice to plaintiff from the city solicitor, the Superintendent of Police of Philadelphia notified the plaintiff that the completion of the marquise would not be permitted, warning plaintiff that if an attempt were made to light the electric lights illuminating the marquise the persons responsible would be arrested.

8. Plaintiff subsequently submitted to the Art Jury an amended plan for the marquise, which plan was disapproved by the Art Jury, certain modifications and changes being submitted by the jury, such as the reduction of the frontage covered by the marquise to the central arch, which would protect the center entrance to the theatre. No design in accord with this suggestion was ever submitted by plaintiff to the Art Jury.

9. An ordinance of Council of Philadelphia, approved June 2, 1921, forbidding the erection of awnings, etc., over the public highways, was amended on May 17, 1923, to permit the erection of canopies and marquises of metal and glass, and among the rules and regulations adopted by the Board of Highway Supervisors to carry into effect the aforesaid ordinances was No. 4, which prescribes that the roof of such canopy or marquise shall be constructed of wire glass set in a metal frame, and No. 8, which provides that applications approved by the Board of Highway Supervisors are subject to the provisions of the Act of Assembly of June 25, 1919, as to approval by the Art Jury of Philadelphia.

10. By ordinance approved Dec. 31, 1919, page 541, City Council enacted that "the jury shall have and exercise all of the powers given by article II, section 11, of the Act of June 25, 1919."

## Discussion.

The plaintiff in this case admittedly violated the provisions of the Act of Assembly of June 25, 1919, P. L. 581, known as the Charter Act, which, in article II, section 11, provides for a board or commission to be known as an Art Jury; setting forth the personnel comprising it and the necessary qualifications of the appointees, together with the functions to be performed by the jury in passing upon all works of art. In article II, section 11, sub-section "e," of the aforesaid act, it is provided as follows:

"The approval of the jury shall also be required in respect to all structures or fixtures belonging to any person or corporation which shall be erected upon or extend over any highway, stream, lake, square, park or other public place within the city, except as provided in this act. . . . Nothing requiring the approval of the jury shall be erected or changed in design or location without its approval. If the jury fails to act upon any matter submitted to it within sixty days after such submission, its approval of the matter submitted shall be presumed."

The plaintiff also admittedly violated the Ordinance of Dec. 31, 1919, page 541, by which the City Council of Philadelphia exercised the rights given it under the aforesaid act.

The plaintiff attempts to justify its action in failing to comply with the statute and resulting ordinance by contending that sub-section "e" set forth above is unconstitutional and that the Art Jury has acted in a discriminatory manner in permitting other property owners to maintain structures above the sidewalk without the approval of the Art Jury.

The constitutionality of the act is attacked on three grounds: *(a)* That the legislature has laid down no definite standards or rules for the guidance of the Art Jury, and, therefore, there is a denial of due process under both the state and Federal Constitutions; *(b)* that the Art Jury is a "special commission" performing a municipal function; *(c)* that its duties are to regulate æsthetics which, since the legislature does not possess the power to do so, it cannot delegate it.

In order to determine whether there is any merit to the plaintiff's contention, we must first ascertain what the section in question regulates, for if it is a property right of the plaintiff, then there is considerable merit to the contention, while if the act deals with a license or privilege given by the city, the situation is entirely different.

At common law there was no right to encroach upon or extend into a public highway, and every such encroachment constituted a nuisance and the municipality had the right to abate such a purpresture or encroachment without specific legislation being required. The Act of March 11, 1789, § 2, 2 Sm. Laws, 462, gives the City of Philadelphia authority to use and control its property the same as an individual, and from the Act of 1838 down to the present the legislature has repeatedly authorized the regulation of nuisances by municipalities such as the one under consideration, regardless of the degree or extent of the encroachment, and one who asserts the right to maintain any structure encroaching upon any part of the highway must show his authority therefor, either from legislative grant or municipal license authorized by statute. See Reimer's Appeal, 100 Pa. 182.

In the case of Lenon *v.* Porter, 65 Pa. Superior Ct. 94, the following language is used by the court:

"The right of passing along or over a public highway has connected with it certain incidents which are essential to the proper enjoyment of it, such as light and air and view. If abutting owners had the right to cover it over so as to shut out the light from above, its enjoyment would not only be greatly interfered with, but it might often be rendered dangerous and practically useless. He who asserts a right to maintain any structure extending over any part of a public street must show legislative authority therefor or municipal license authorized by statute: Reimer's Appeal, 100 Pa. 182. It is clearly within the power of the legislature to at any time prohibit the maintenance by owners of abutting property of any structures connected with their buildings extending over public streets, and this power they may delegate to municipalities, to be exercised within the municipal limits.

"When the City of Philadelphia makes one regulation with regard to the erection and maintenance of awnings over the sidewalks, that does not exhaust the power conferred upon it by the Act of 1838, for that statute provides that the city may make 'such and so many rules and regulations as to the councils may seem expedient.' Regulations which were wise and proper in 1838 might, by the growth of the city and increased traffic upon the streets, become wholly inadequate and inexpedient. The power remained in the city to change the regulations with regard to awnings and awning posts, or to prohibit the maintenance of any such structures, and when an ordinance under which an awning was authorized is repealed, the owner ceases to have any authority for his intrusion upon the public street. The appellants do not question these general principles, but they contend that the regulations now in question are invalid because they apply only to South Street. Their contention, if correct, would leave the municipal authorities powerless to ordain a regulation applicable to a street where peculiar conditions rendered such regulation necessary

for the public convenience and the maintenance of good order, unless at the same time such regulation was made to apply to streets where its enforcement would not only be unnecessary but burdensome and inconvenient."

It is, therefore, apparent that no attempt is made in the act to interfere with the exercise of any natural or vested right in private property. It empowers a coördinate branch of the municipal government to exercise control and supervision in cases of encroachment upon municipal property, and while there are no restrictions upon the exercise of the jury's discretion, nor specific standards or criteria set up for its guidance, no one can be heard to complain of the manner in which a municipality is permitted to control and regulate the use of its property, particularly when the privilege of encroaching upon a highway is asked by private citizens or corporations, permission being a matter of grace and not of right. Were this an attempt to regulate the use of private property it would clearly be in violation of the rights of the property owner and unconstitutional. See Bryan v. City of Chester, 212 Pa. 259.

In this connection, it is interesting to note that the section of the act, the constitutionality of which is now being attacked, was before the Superior Court in the case of Nierenberg v. R. C. Maxwell Co., 76 Pa. Superior Ct. 295, and that in this case the constitutionality was not even questioned. Judge Keller uses the following language in construing this act, which clearly limits its application so that no property rights can be involved:

"We are not favorably impressed with the proposition that, under existing legislation, the approval of the art jury is required in respect to structures and fixtures placed wholly on a private owner's property and not erected upon or extending over any highway, stream, lake, square, park or other public place within the city, or that the phrase 'upon . . . any highway,' as used in clause (e) of section 11, article II, of the Act of June 25, 1919, P. L. 581, is equivalent to 'upon any property fronting on any highway,' any more than the use of almost the same phrase in clause (d) of that section with reference to works of art has anything to do with statuary, paintings, stained glass windows or mural decorations erected or placed on the grounds or in the houses of private owners of land fronting on any highway belonging to or under the control of the city. It seems to us that the words 'erected upon' and 'extending over,' used in said clause in connection with 'any highway . . . or other public place,' have a correlative meaning and refer to a structure or fixture erected so as to occupy part of the highway on the surface or just out over it above."

This case is clearly distinguishable from the case of Humphreys v. Schofield et al., 14 D. & C. 127, in which Judge Stern recently held that the Ordinance of Jan. 30, 1923, which provides that no buildings shall be erected or altered until the location and plans have been approved by the Commissioners of Fairmount Park is unconstitutional. That ordinance attempts to regulate private property rights, while the act and ordinance in this case have nothing to do with private property rights, except the property rights of the municipality, and under what circumstances they shall be surrendered in the form of a privilege to abutting property owners.

The case of Yick Wo v. Hopkins, 118 U. S. 356, cited by the plaintiff in support of its contention that there is a denial of due process, is clearly distinguishable from this case. In that case an ordinance of the City of San Francisco declared it to be unlawful to carry on a laundry business within the confines of the city without the consent of the supervisors, unless the building in which the business was conducted was constructed from brick or stone. The

Supreme Court of the United States declared the ordinance unconstitutional, being in violation of the 14th Amendment; but the court, in its opinion, pointed out the distinction between the case at bar and those where discretion is lodged by law in public officers or bodies to grant or withhold licenses to keep taverns or places where liquor is sold, where one of the conditions is that the applicant shall be a fit person for the exercise of the privilege, because the fact of fitness is submitted to the judgment of an officer and calls for the exercise of a judicial nature. In Locke's Appeal, 72 Pa. 491, 498, it was said by Agnew, J.: "What is more common than to appoint commissioners under a law to determine things upon the decision of which the act is to operate in one way or another? . . . Take the case of granting a license to keep an inn and sell liquor. The judge determines whether the license is necessary, and if not necessary, the law says to the applicant, 'No license.' The law takes effect just as the judge determines, yet who says it is the court that legislates? . . . The true distinction, I conceive, is this: The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. . . . Half the statutes on our books are in the alternative, depending upon the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said the exercise of such a discretion is the making of the law."

Nothing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislature unconstitutional and void.

The constitutionality of an act of assembly cannot be tried by the motives and designs of the lawmakers, however plainly expressed. If the act itself is within the scope of their authority, it must stand: Powell v. Com., 114 Pa. 265; Mutual Film Corp. v. Breitinger, 250 Pa. 225 (1915).

The distinction is clear between the exercise of the right to conduct a lawful business, which right is undoubtedly property within the meaning of the amendment, and an application for a permit to erect a structure which would be illegal without such permission as constituting a nuisance.

In the case of State ex rel. Crumpton v. Montgomery, 177 Ala. 212, 59 So. Repr. 294, the following language was used:

"It is universally recognized that the act of engaging in the sale of intoxicants may be wholly forbidden and that a license to engage in the traffic in liquors is a privilege merely revocable at the will of the supervisor granting power; that there is in it no element of property right or vested interest of any kind. Being so, it may be a necessary consequence that rules of law protective of vested rights are without influence in respect of such a privilege. It would seem to be axiomatic that even one who is, as he conceives, wrongfully denied participation in a matter of mere privilege or who is discriminated against in his effort or desire to enjoy that privilege with another no better entitled, has no firm basis of complaint unless the law of the creation of the privilege and governing the selection of its beneficiaries brings him within its protection and should and does control the authority to which the selection is committed. In other words, it would seem that the selection of the beneficiaries of a mere privilege not involving a matter of right may be committed to the discretion of a body created for that purpose, and so without impinging upon any vested right of one who desires to enjoy the privilege or from whom it was in the discretion of the body withdrawn."

To the same effect are the cases of State *v.* Gray, 61 Conn. 39, 22 Atl. Repr. 675; Brown *v.* Stubbs, 128 Md. 129, 97 Atl. Repr. 227; Rizzo *v.* Douglas, 201 N. Y. Supp. 194; Lane *v.* Whitaker, 275 Fed. Repr. 476.

That no right of appeal is provided for from the decision of the board is immaterial. In the case of Mutual Film Corp. *v.* Breitinger, 250 Pa. 225, where this objection was raised with reference to the statute creating a board of censors for motion pictures, the following language was used: "It is further objected that the statute provides no appeal from the determination of the tribunal. But in such cases the right of appeal on other than constitutional grounds may be conferred or withheld at the discretion of the legislature. . . . Were this not expressed in the act, it would none the less be implied, at least so far as pertains to any violation of rights guaranteed by the 14th Amendment: Plymouth Coal Co. *v.* Pennsylvania, 232 U. S. 531, 547."

Plaintiff's contention that unrestricted authority may be abused is best answered in the following language from the above cited case, adopted from the ruling of the United States Supreme Court in the case of Plymouth Coal Co. *v.* Pennsylvania, 232 U. S. 531 (232 Pa. 141):

"And in determining whether the constitutional rights of a party have been affected by a state statute, the courts will presume, until the contrary is shown, that any administrative body to which power is delegated will act with reasonable regard to property rights."

In addition to that, the names of the members that constitute the Art Jury should be sufficient to put to rest any fears on the part of the plaintiff of any abuse of authority. The danger to the public and the adjoining property owners of an unbridled liberty to erect any construction over the highways are far greater than any danger likely to accrue from an abuse of discretion on the part of the Art Jury.

It is also argued by the plaintiff that the Art Jury is a "special commission," exercising control over municipal property and performing municipal functions, and is, therefore, prohibited by article III, section 20, of the State Constitution, which provides: "The General Assembly shall not delegate to any special commission, private corporation or association any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

The Charter Act of 1919 created for cities of the first class a form of government, setting up the necessary and proper municipal bodies and bureaus. The legislature embodies in the act the Art Jury as one of the agencies of municipal government with distinct authority and powers. That act constitutes the charter under which the municipal functions of the City of Philadelphia are exercised and in no way can be considered to be such special legislation as would violate the section of the Constitution quoted.

In Moll *v.* Morrow, 253 Pa. 442 (1916), cited in support of the plaintiff's contention, the Act of June 27, 1913, P. L. 638, creating a special board to supervise public morals in the Department of Public Safety of the City of Pittsburgh, was declared unconstitutional as violating article III, section 20, in establishing a special agency for a special and limited purpose. The court said: "There is no question that the legislature can establish almost any form of government it pleases and that it may subdivide municipal functions, create departments, bureaus and other agencies and change them. But the question is not determined by what might have been done. There has been created for cities of the second class a form of government. This bureau is

alien from it in every characteristic." Here the court clearly distinguishes special acts creating new branches of municipal government from an act granting a charter to a municipality such as the Charter Act of 1919, in which the Art Jury is established as a distinct element in the governmental structure.

The contention that the Art Jury cannot regulate æsthetics is also without merit. In the first place, while this may be true as to private property, there certainly does not seem to be any good reason why, when a privilege is granted, it cannot be surrounded with such limitations as were done in this case. In addition to that, it is apparent from the decisions cited above that at common law and from that time until the present the law has regarded the rights of the public to the unobstructed use of the street—to light and air and sunshine—as a valuable right, and that any encroachment on it was considered a nuisance, without reference to the question as to whether the structures were physically safe in construction or against fire hazard, and that any board which is entrusted with the stewardship of this valuable right has a very important function to perform. That the æsthetic is combined with this only adds to the importance of their work.

In Kerr's Appeal, 294 Pa. 246, 250, it was held that: "While a zoning ordinance cannot be sustained merely on æsthetic ground, that may be considered in connection with questions of general welfare. See Sundeen v. Rogers (N. H.), 141 Atl. 142."

In addition to that, the magnitude of the right to be protected is immaterial.

In the case of Breisch v. Locust Mountain Coal Co., 267 Pa. 546, it was held: "So it has been held that injunctions to restrain encroachments on highways, though they should be granted with care, will, when public rights are invaded, be granted. In such case, no question of the amount of damage is raised, but simply the one of the invasion of a right: Reimer's Appeal, 100 Pa. 182, 187. A nuisance per se, when public in its character, may, upon information by the Attorney-General or at the suit of a municipality, be enjoined: Mint Realty Co. v. Wanamaker, 231 Pa. 277, 279."

The failure to enforce this ordinance in other cases can have no bearing on the decision in this case.

In Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355, 373, it was specifically held that "failure to enforce an ordinance furnishes no reason for not enforcing it under proper conditions."

Moreover, the court's right to review the Art Jury's discretion in this matter is limited. In Kerr's Appeal, 294 Pa. 246, Mr. Justice Walling, citing from the Federal case of Nectow v. City of Cambridge, 277 U. S. 183, in discussing the zoning ordinance, uses the following language: "A court should not set aside the determination of public officers in such a matter unless it is clear that their action has no foundation in reason and is a mere arbitrary or irrational exercise of power, having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense."

In the case of Summerhill Borough v. Sherbine, 88 Pa. Superior Ct. 419, it was held that: "Any occupation of the property inconsistent with the public right is a nuisance and no length of time will legalize a public nuisance: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Breisch v. Locust Mountain Coal Co., supra, page 552."

### Conclusions of law.

1. At common law, any extension into a public highway was a nuisance and was prohibited, and this is still the law except where modified by statute.

2. Statutes granting rights to erect any structure extending over a public highway create privileges and do not create property rights in the individuals to whom the rights are given.

3. The Art Jury is vested with duties involving the protection of public property, in addition to matters of æsthetic taste, and its duties do not conflict with the duties of other bureaus of the City of Philadelphia.

4. Sub-section "e," section 11, article II, of the City Charter Act of 1919, P. L. 581, conferring upon the Art Jury power over all structures erected over highways, is valid and constitutional, as is the ordinance passed by Council of Philadelphia in pursuance thereto as of Dec. 31, 1919.

5. The marquise erected in this case on the Walnut Street front of the Forrest Theatre did not comply with the ordinance of the Council of Philadelphia, approved June 2, 1921, as amended on May 17, 1923, in that the roof was not constructed of wire glass set in metal frame, and in that the approval of the Art Jury of Philadelphia was not obtained.

6. Failure to enforce this ordinance in other cases has no bearing on the instant case.

7. Any occupation of public property inconsistent with the public right is a nuisance and no length of time will legalize it.

8. The plaintiff is not entitled to the relief sought by it, and its bill should, therefore, be dismissed.

9. The defendants are entitled to the affirmative relief sought by them.

## Decree nisi.

And now, to wit, May 15, 1930, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. The plaintiff's bill in equity is dismissed.

2. The plaintiff, the Walnut and Quince Streets Corporation, its officers, agents and tenants, are permanently enjoined from maintaining and using the present marquise over the sidewalk of Walnut Street in Philadelphia in front of the Forrest Theatre, and are directed to remove the said marquise, said injunction and removal to commence within forty-five days, unless before the expiration of this period the said Walnut and Quince Streets Corporation obtains the approval of the Art Jury to a modified plan of the existing marquise, in which case the plaintiff shall remove the portions of the existing marquise not incorporated into the revised and approved plan.

3. The plaintiff, the Walnut and Quince Streets Corporation, its officers, agents and employees, are permanently enjoined from erecting any other marquise, unless it is approved by the Art Jury of the City of Philadelphia, and unless it complies with the existing laws and ordinances.

4. The plaintiff is directed to pay the costs of this suit.

The prothonotary is directed to notify the parties or their counsel of the filing of the above adjudication, and that, unless exceptions thereto be filed within ten days, the decree nisi shall be taken as and for the final decree in the cause.