## Straessle v. Philadelphia Zoning Board of Adjustment

*T. J. Gaffney*, for appellant.

*H. Steerman* and *G. C. Farrier*, assistant city solicitor, for defendant.

SMITH, P. J., February 15, 1950.—This case comes before the court on an appeal from a certificate of variance granted by the Zoning Board of Adjustment of the City of Philadelphia on November 25, 1949, and from a finding by that board.

On or about February 14, 1949, Harry L. Brown of 5017 North Fifth Street, Philadelphia, acquired by a deed of conveyance, premises situate 5011-15 North Fifth Street, Philadelphia, at which time there was erected on that ground two one-story buildings. At

and before the date of acquisition, to wit, February 14, 1949, these premises as located were in a neighborhood classed as "A" Commercial for zoning purposes, under the Ordinance of 1933 as amended. Under that ordinance as amended, there are two material provisions:

Occupied area. "Not more than seventy-five (75) percent of the lot area or intermediate lots, etc.

Open area. "The open area shall not be less than twenty-five (25) percent of the lot area on intermediate lots . . . and shall consist of at least the required minimum rear yard in all cases, plus such open courts and/or side yards as shall be required to equal an area not less than the total area above required."

The application filed with the Department of Engineering and Zoning of the City of Philadelphia was for permission to erect on the land at 5011-15 North Fifth Street, Philadelphia, a building occupying the entire tract, with a width of 60 feet on Fifth Street, and with a depth of 100 feet, leaving no open area or yard space. Plaintiff is the owner of and resident of a property situate at 444 W. Ashdale Street, Philadelphia, which is immediately adjacent to the rear property line of Harry L. Brown. On July 7, 1949, the Bureau of Engineering, Surveys and Zoning refused the application of Harry L. Brown because the Ordinance of 1933 as amended required a rear yard of the minimum depth of 10 feet and an open space of 1,500 square feet, neither of which requirements had been provided for in the application.

Harry L. Brown then took an appeal to the zoning board of adjustment. After two hearings before the zoning board of adjustment, on July 19, 1949, that board granted a certificate of variance, stating, "an unnecessary financial hardship would be imposed upon the owner if the strict requirement of the ordinance as to rear yard and open space are imposed". The

second hearing was held on August 16, 1949, in order to give protestants an opportunity to be heard that the variance would be contrary to the enabling Act of May 6, 1929 and that no unnecessary hardship would result to applicant if his application were denied. On November 20, 1949, the zoning board of adjustment issued a certificate of variance, stating that the board "was still of the opinion that an unnecessary hardship would be imposed on the neighborhood if the strict requirements as to an open area and yard were imposed". Bertha Straessle then took an appeal to this court.

It appears that on February 14, 1949, when Harry L. Brown acquired title to the three properties situate 5011-15 North Fifth Street, Philadelphia, he had or should have had knowledge of the Ordinance of 1933 as amended. His only reason presented for his desire to build up to the end of his party lines is that he will not construct a building to house his furniture business and showroom unless his proposed building is allowed to occupy the entire lots.

It is not the purpose of this court to take the place of the zoning authority, but as was pointed out in Taylor v. Haverford Township, 299 Pa. 402, 149 Atl. 659, such zoning authorities are subject to have their work set aside where its application to a particular property is properly found on judicial review to be unreasonable or confiscatory. If there is no legal ground for the finding as made by the board, the same may be set aside. Valicenti's Appeal, 298 Pa. 276, 281.

Ordinances which provide for an open area and yard space on ground upon which a building may be erected have received judicial sanction as a lawful exercise of policing power, especially where the restriction has a substantial bearing on the health, safety, morals or general welfare of the public. The question whether an ordinance controls an owner's use of his

property for the public good is largely legislative with which the courts only interfere to prevent an arbitrary abuse of power: Kerr's Appeal, 294 Pa. 246; Scholl v. Yeadon Borough, 148 Pa. Superior Ct. 601, 604. The benefits of a zoning regulation accrue not only to the municipality, representing the general public, but also to the abutting property owners and while their rights are not strictly contractual (Hollearn v. Silverman, 338 Pa. 346, 12 A.(2d) 292) they are to a degree analogous to building restrictions, running with the land imposed in a deed for the benefit of adjoining or adjacent property owners: Landell v. Hamilton, 175 Pa. 327; Allen v. Hamilton, 175 Pa. 339; Landell v. Hamilton, 177 Pa. 23; Ladner v. Siegel, 294 Pa. 360, 364, 365; DeBlasiis v. Bartell & Oliveto et al., 143 Pa. Superior Ct. 485. In Fitzgerald v. Merard Holding Co., 106 Conn. 475, the Supreme Court of Errors of Connecticut, speaking through Chief Justice Wheeler, stated:

"The erection of a structure though it is not in itself a nuisance becomes such when it is located in a place forbidden by law."

The Zoning Ordinance of 1933, as amended, has stood the test of time. It was enacted to preserve the condition of the neighborhood as it existed when the ordinance was passed, and constitutes a sound distinction (Inspector of Buildings of Lowell v. Stoklosa, 250 Mass. 52; City of Aurora v. Burns, 319 Ill. 84, 149 N. E. 784, 788, 789; Junge's Appeal (No. 2), 89 Pa. Superior Ct., 548, 562), and was not done to create a discrimination in favor of any property owner.

The general law seems to be that a zoning authority has broad powers in respect to zoning, especially as to areas, but it has no right or authority to enforce restrictions on properties within a definite zone and arbitarily and by a mere favor remove such restrictions from another property where there is no reasonable

ground or basis for the discrimination. We believe it must be taken as admitted that the Zoning Ordinance of 1933 is a reasonable one. We are aware that in certain special circumstances the board of adjustment may grant a variance. The primary thing in the case at bar is to ascertain what the zoning authority was attempting to do when faced with the provisions of the Ordinance of 1933 and the application of Harry L. Brown. The zoning board of adjustment in its final finding handed down on November 25, 1949, states:

"The members of the board visited the site and after a careful study were still of the opinion that the refusal of the authorization to grant a permit for the proposed construction would be a hardship on the neighborhood and therefore upholds its decision that a permit should be granted."

It is our opinion that if a city ordinance based upon the police power of a municipality is enacted regulating the open space about a building or a yard space, in a neighborhood which is classed as "A" Commercial, especially where such ordinance has remained in full force and effect for a number of years, that it should not be arbitrarily varied just to suit the convenience of a property owner who for economical reasons or for any other reasons, wishes to build on its entire lot up to his party lines. His desires alone are surely not paramount to the health, safety, morale or general welfare of those who reside in the community and adjacent to his property. This case is not controlled by the opinion of Mr. Chief Justice Maxey in Crawfords Zoning Case, 358 Pa. 636, where an applicant desired to convert a stable into a dwelling house, and where the yard space was not of a size sufficient to meet the restrictions of a zoning ordinance insofar as it affected the construction of a dwelling. There the alterations were only to the internal structure of an existing building with its location fixed and where no fire hazard

was increased by its occupation as a dwelling. It is there apparent to any reasonable person that a strict compliance with the ordinance would impose an unnecessary hardship on the owner in shifting the location of the building from the place on which it was to another place, to allow for the area provided for in the ordinance. As Chief Justice Maxey said:

"If 'the variance' asked for be granted, will 'the spirit of this ordinance' 'be observed and substantial justice done'. . . . with no insecurity to 'the public health, safety and public welfare'."

As was said in Jennings' Appeal, 330 Pa. 154, 160:

"The power to 'vary or modify any of the regulations or provisions' (of a municipal ordinance) is one that must be exercised 'in harmony with its general purpose and intent and in accordance with the general or specific rules herein contained so that the spirit of this ordinance shall be observed, the public health, the public safety and the general welfare secured and substantial justice done'."

In Kerr's Appeal, 294 Pa. 246, it was said:

"The difficulties and hardships, which move the board to depart from the strict letter of the ordinance, should be substantial and of compelling force . . . Mere hardship will not invalidate a zoning ordinance."

In Valicenti's Appeal, supra, it was said:

"It is true that variations may be permitted, but only in cases of practical necessity, and for reasons that are 'substantial, serious and compelling'."

It is not enough to show that the variance as granted would permit a more economical use of the property: Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582. In Junge's Appeal (No. 1), 89 Pa. Superior Ct. 543, 546, it is said:

"The authority thus placed in the Board is not an arbitrary one. The discretion vested in the Board is subject to review if abused or not exercised in accord-

ance with the provisions of the Act. The Statute does not give the Board power to do whatever they feel inclined to, regardless of the provisions of the Statute. . . . The strict letter of the ordinance may be departed from only where there are practical difficulties or unnecessary hardships in the way of carrying it out; and in such manner that the spirit of the ordinance may be observed, the public health, safety and general welfare secured and substantial justice done. No other considerations should enter into the decision."

As was repeated in Devereux Foundation, Inc., v. Zoning Board, 351 Pa. 478, 484, 485:

"Mere hardship is not sufficient; there must be unnecessary hardship. . . . It (the applicant) bought the property with full knowledge of the terms of the ordinance, and certainly the mere curtailment of its ambition to expand its work over forbidden territory is not an unnecessary hardship within the statutory meaning of that phrase; to hold otherwise would be to nullify the entire purpose and effect of the zoning regulations. Moreover, the power given by the Statute and by the ordinance to authorize a variance is limited by the provision that it must be such 'as will not be contrary to the public interest' and this presumably is intended to insure protection of the interests of that portion of the public which is affected by the variance, namely, the owners and occupants of the neighboring properties."

This opinion (by Mr. Justice Stern) also states (p. 485):

"We do not believe that it was the intention of the Legislature, nor of the township supervisors, to empower a board of adjustment to set at naught the zoning statute and ordinance under the guise of a variance."

It seems to us that if an owner of a tract of land within an area restricted by city ordinance, is per-

mitted to extend the building line of a property to the limits of the lot it would amount logically to a classification of a district within itself without treating alike all persons living in the same zone. Since the council of the city itself may not spot zone this particular lot (Huebner et ux. v. Phila. Saving Fund Society et al., 127 Pa. Superior Ct. 28) neither may the board of adjustment allow this variance, which would be tantamount to the same thing.

At the hearing before the zoning board of adjustment, 16 persons residing on Ashdale and Ruscomb Streets, which run at right angles to Fifth Street and are in the rear of the applicant's property, joined with plaintiff in a protest by letter against this application for a variance. All of these parties resided in dwellings on those two streets. For defendant, there was also a letter signed by 17 people who had their places of business on North Fifth Street, nine of whom resided on the west side of Fifth Street or across the street from this particular property.

We are of the opinion that the finding of the board that the refusal of the authorization to grant a permit for the proposed construction would be a hardship on the neighborhood is not justified by the facts. It may be that a larger building would be more advantageous to one who desires to construct the building on his land, but nothing has been brought to our attention showing definitely unnecessary hardship. Applicant bought this land with due knowledge of the fact that it was subject to an ordinance and he must have known that he could not erect such construction without having had a variance granted. The board in the instant case not only attempted to vary the ordinance, but in order to enable applicant to construct his building it attempted to nullify the entire purpose of the zoning ordinance. It failed to take into consideration that the

difficulties that now confront applicant are due entirely to his own creation.

The findings of the board that the refusal of the authorization to grant a permit for the proposed construction would be a hardship on the applicant and on the neighborhood, is not in harmony with the object of the statute or the ordinance and is not properly supported by evidence. We thus believe that it is a flagrant abuse of discretion on the part of the board of adjustment in granting this variance, and for this reason find that the finding of the board is not sustained.

### Order

And now, to wit, February 15, 1950, the finding of the Zoning Board of Adjustment of the City of Philadelphia granting a variance to Harry L. Brown, to construct a building to the party lines of properties 1511-15 North Fifth Street, Philadelphia, is reversed; costs to be placed upon appellee.