ADDISON MONK *vs.* WILLIAM PACKARD and others.

Oxford. Opinion August 4, 1880.

*Nuisance. Burial ground.*

A burial ground which does not affect the physical health of the occupants of of a dwelling house near which it is located, nor their olfactories by any effluvia from the graves, is not in law a nuisance. The human contents of graves cannot offend the senses in a legal point of view. To become a nuisance the graves or their contents must be such in their effect as naturally to interfere with the ordinary comfort physically of human existence, and the inconvenience must be something more than fancy, delicacy or fastidiousness.

ON MOTION.

The facts appear in the opinion.

*O. H. Hersey* and *Enoch Foster*, for the plaintiff.

In the defendants' burial ground the nearest grave is two rods and nine links from the plaintiff's sitting room window. The close proximity of the cemetery renders the enjoyment of the plaintiff's dwelling house and well of water offensive and uncomfortable, constantly exciting apprehensions of disease; and it greatly injures the value and sale of plaintiff's property.

Nuisance is "anything which worketh hurt, inconvenience or damage." 3 Blackstone, 213.

That which is offensive to the senses and renders the enjoyment of life or property uncomfortable is a nuisance. *Begein* v. *Anderson*, 28 Ind. 79; *Catlin* v. *Valentine*, 9 Paige, 575; *Brady* v. *Weeks*, 3 Barb. 157; *Barnes* v. *Hathorn*, 54 Maine, 124.

Upon the question of disturbing the verdict counsel cited: *Googins* v. *Gilmore*, 47 Maine, 9; *Williams* v. *Buker*, 49 Maine, 427; *Peabody* v. *Hewett*, 52 Maine, 33; *Farnum* v. *Virgin*, 52 Maine, 576; *Gleason* v. *Bremen*, 50 Maine, 222; *Drown* v. *Smith*, 52 Maine, 141; *Stone* v. *Augusta*, 46 Maine, 127; *Darby* v. *Hayford*, 56 Maine, 246; *Gould* v. *White*, 26 N. H. 189.

*Black & Holt*, for the defendants.

VIRGIN, J. This is an action on the case for an alleged nuisance, consisting of a private burying ground, containing seven or eight graves, situated near the plaintiff's dwelling house.

Prior to 1850, the father of two of the defendants, and of the wives of the other defendants, owned about fourteen acres of land on the east side of the county road, in a sparsely settled part of Hebron. The northeast (back) corner of the lot, bounded on the east by the high bank of a brook, was appropriated for a private burial place, in which, at various times from fifteen to forty years ago, some nine or ten bodies had been buried in a somewhat promiscuous manner. It was never inclosed, and it had no definite boundaries; but it was separated from the remaining portion of the lot, by a board fence extending from the road easterly near the graves to the brook, leaving about an acre north, and the remainder south of the fence.

In 1850, one of the defendants came into possession of the larger parcel, erected thereon a small house, the front of which was about thirty-three feet from the road, with the north end about the same distance from the board fence; and in the rear of the house, but quite near to it, a small stable with its north end flush with the fence.

In 1868, the plaintiff purchased the larger parcel of land with the buildings thereon, dug a well some thirteen feet in depth, and about seventy feet from the fence, between the house and the road, and has occupied the premises most of the time since.

In 1875, the defendants fenced off the southwest (front) corner of the small lot, inclosing a parcel thereof, thirty-three feet on the road, and extending back nearly to the northeast (back) corner of the stable for a new burying ground; and into this they removed the remains of all the old graves except two, one of which being included within the new inclosure, and the other not removable on account of water in the grave. One of the reasons for removing the graves was the caving off of the bank of the brook as it was worn away by spring and fall freshets, which had nearly reached the graves nearest the bank. The old board fence was removed, and a double wall, faced on the side next the plaintiff's premises, was substituted; the new cemetery was

tastefully graded and suitable headstones erected at the several graves, the nearest being about forty feet from, and opposite to the window of the plaintiff's sitting room, and also in plain view from his front windows and door. As first located, the graves were only visible from the back rooms of his house.

The plaintiff claimed this new grave yard to be a nuisance, for the reason that its proximity and relative position render his residence uncomfortable and the enjoyment of his property disagreeable; and that it has rendered the water in his well unpalatable and unwholesome, and has lessened the market value of his property.

The jury, under instructions not excepted to, returned a verdict for the plaintiff and assessed damages in the sum of twenty-five dollars; which the defendants ask us to set aside as being against law and the weight of evidence.

There is no pretense that the plaintiff's physical health, or his olfactories have in any degree, been affected by any effluvia from the new graves; for the undisputed testimony is overwhelming that they contained nothing which could render such a result possible. And if the verdict was based upon testimony of the plaintiff, that the water in his well (which is closely covered about the pump, and has never been cleaned out) "tastes bad and smells bad," on account of a few dry bones buried seventy feet distant therefrom, with level ground intervening, it would be so manifestly erroneous and against the weight of evidence, we should not hesitate to set it aside.

Nor can the verdict be sustained upon the sole ground of the cemetery's proximity to the plaintiff's premises, and the consequent depreciation of the market value of his property. For a repository of the bodies of the dead is as yet indispensable, and wherever located, it must *ex necessitate* be in the vicinity of the private property of some one who might prove its market value injuriously affected thereby. *New Orleans* v. *Wardens, etc.*, 11 La. An. 244.

But assuming that the jury, in respect to these matters, found in behalf of the defendants and concluded that there was no injury to the plaintiff's property, or to his physical health or comfort, and based their verdict solely upon the ground that, on account of its relative position with the plaintiff's house, the cemetery

inevitably meets his immediate view whenever he looks from the north window of his sitting room or steps from his door, and that thereby the comfortable enjoyment of his dwelling house is interfered with—then the defendants contend that the verdict is against law—upon the ground that such discomfort is one purely mental, and is not a cause of action.

It cannot be doubted that the law recognizes that to be a nuisance which is naturally productive of sensible personal discomfort, as well as that which causes injury to property. *St. Helens Smelting Co.* v. *Tipping*, 11 Ho. L. Cas. 642. But it must injuriously affect the senses or nerves. Thus sound, whether caused by a locomotive blowing off steam, the ringing of bells or the barking of dogs, whenever it becomes sufficient to injuriously affect residents in the neighborhood, is actionable. *First Baptist Church* v. *R. R. Co.* 5 Barb. 79, and cases there cited. To become actionable, the effect of sound must be such as naturally to interfere with the ordinary comfort, physically, of human existence, and the inconvenience must be "something more than fancy, delicacy or fastidiousness." Cooley Torts. 600.

Cemeteries are not necessarily even shocking to the senses of ordinary persons. Many are rendered attractive by whatever appropriate art and skill can suggest, while to others of morbid or excited fancy or imagination, they become unpleasant and induce mental disquietude from association, exaggerated by superstitious fears. The law protects against real wrong and injury combined, but not against either or both when merely fanciful.

The human contents of these graves cannot, as they lie buried there, offend the senses in a legal point of view. The memorial stones alone affect the senses, and the same would result to the superstitious, though nothing human lay beneath them. If this burial ground is under the circumstances a private nuisance, then is it also a public nuisance to every traveller who passes on that road, as well as every soldiers' monument in the country. See Cooley Torts. 602 *et seq.; Barnes* v. *Hathorn*, 54 Maine, 124.

> *We think the verdict is against law,*
> *and it must be set aside.*

APPLETON, C. J., WALTON, PETERS, LIBBEY and SYMONDS, JJ., concurred.