## Frabotta v. Zoning Board of Adjustment

*Joseph Leta, Jr.,* for appellants.

*Thomas V. Mansell* and *Richard N. McKee,* for appellee.

BRAHAM, P. J., October 21, 1955.—This is an appeal by an adjoining property owner from a decision of the New Castle Zoning Board of Appeals which reversed the order of the city engineer refusing a permit to use a vacant lot as a place for the sale of second hand automobiles and issued the permit. No record was made of any testimony taken before the board nor of the witnesses who testified. Accordingly the case was heard in full in this court. From the evidence adduced the court makes the following

### Findings of Fact

1. Jefferson Street in the first ward of the City of New Castle runs approximately north and south. At the point just north of where Boyles Avenue if extended would cross Jefferson Street, Wilmington Avenue

leaves Jefferson Street and passes to the northwest forming a sharp angle at the apex.

2. On June 14, 1898, the councils of the City of New Castle, herein known as the city, adopted ordinance 1042 recorded in Ordinance Book 4, page 164, which directed the making of a city map which should show the lines of streets "opened or intended to be opened".

3. After June 14, 1898, and before April 8, 1908, a city map was prepared, adopted by the city and placed of record on this later date. This map shows a street 50 feet in width crossing from Jefferson Street to Wilmington Avenue. The street was 50 feet in width, was known as Park Avenue and was a projection of the street known as Park Avenue which was opened and used some distance to the east. The lines of the street were parallel to the lines of Laurel Avenue which is the first street north of Park Avenue. The triangular lot left between Park Avenue on the map and the apex at the intersection of Jefferson Street and Park Avenue extended 188.74 feet along the east line of Wilmington Avenue, 171.66 feet along the west line of North Jefferson Street and 79 feet along the south line of Park Avenue as located.

4. The owner of the lands at and about the intersection of North Jefferson Street and Wilmington Avenue in 1898 and 1908 was Joseph S. White.

5. On September 24, 1919, by a deed recorded in Deed Book, J. Crawford White, executor, conveyed a tract of land involving the lands in question to J. Clyde Gilfillan. The deed was only recorded in Deed Book 209, page 397. In this conveyance he accepted and reserved "all ordained and dedicated streets or alleys contained therein or any rights that any adjoining owners may have acquired by reason of the description of lands sold to them, bordering on proposed streets". There is not shown to have been any dedication of

Park Avenue by Joseph S. White and no ordaining of it by the city except by adopting the map.

6. On June 1, 1922, J. Clyde Gilfillan conveyed to John H. Stoner a lot of land 40 feet wide and extending back 120 feet. This deed was recorded in Deed Book 234, page 378. This lot was conveyed by Stoner to Clarence A. Patterson by a deed dated July 15, 1925, and recorded in Deed Book 255, page 215. An additional conveyance was made by Gilfillan to Patterson by deed dated June 2, 1924, and recorded in Deed Book vol. 246, page 470. The purpose of the latter deed was to complete Patterson's title to Jefferson Street. The Patterson lands were conveyed to Mario Frabotta et ux. by deed dated May 19, 1944, and recorded in Deed Book vol. 330, page 195. Plaintiffs' said lands lie just north of the lands claimed by Fobes in this action.

7. On February 7, 1925, J. Clyde Gilfillan conveyed a triangular lot of land just north of the intersection of Wilmington Avenue and Jefferson Street to E. C. Wadding. The deed was duly recorded in Deed Book 252, page 446. The lot extended 188.74 feet on Wilmington Avenue, 171.66 feet on Jefferson Street and 79 feet along other lands of Gilfillan which were shortly conveyed to Fobes.

8. The conveyance by Gilfillan to Charles O. Fobes, defendant, of the lands midway between plaintiffs' lands and Wadding's land was dated November 5, 1925, and was duly recorded in Deed Book vol. 256, page 226. The description was as follows:

"Beginning at a point on the east line of Wilmington Avenue 420 feet south-east of the intersection of the east line of Wilmington Avenue with the south line of Laurel Avenue and running thence in a south-easterly direction by said east line of Wilmington Avenue, a distance of 72 feet more or less to lands of E. C. Wadding; thence by same east a distance of 79 feet to North Jefferson Street; thence by the west line of said North

Jefferson Street north a distance of 120 feet more or less to lands of Patterson; thence by same southwesterly a distance of 123 feet more or less to Wilmington Avenue to place of beginning."

This conveyance included the area of Park Avenue.

9. There is no contention that Gilfillan did not have enough land to satisfy the deed calls in the deeds to Stoner, Wadding and Fobes. None of the deeds above referred to describe the lands thereby conveyed with reference to Park Avenue.

10. On December 14, 1925, the city adopted a zoning ordinance, effective December 24, 1925, and caused a zoning map to be prepared which is filed in the recorder's office of Lawrence County in zoning file 1. This map shows Park Avenue located as described in the third finding of fact and lying just north of the Wadding line. All of the properties concerned in this appeal were then placed in a "B Residence Zone".

11. On February 18, 1927, the city council adopted ordinance no. 3968 which ordained Park Avenue between Wilmington Avenue and Jefferson Street as a city street. It was a continuation of Park Avenue as then ordained and opened as far west as Mercer Street.

12. Park Avenue was never opened as a street so as to be visible on the ground and has never been used as a street.

13. On August 30, 1927, ordinance 4060 was introduced in city council to repeal ordinance 3968. This ordinance was passed September 9, 1927.

14. In 1928 Charles L. Fobes began to build a structure on the center of his lot, considering the area of Park Avenue as a part of his lot. The city objected and filed a bill in equity at no. 2, June term, 1928. The basis of the city's claim was that Fobes was building a commercial structure. Fobes in his answer asserted ownership of the whole lot including the area of Park Avenue.

15. At some time after 1925 and prior to 1951, E. C. Wadding built a gasoline service station for automobiles on his lot at the intersection of Wilmington Avenue and Jefferson Street. It did not conform to the existing zoning ordinance when it was built.

16. On July 9, 1951, the city council enacted a new zoning ordinance known as ordinance no. 5201. A map was also adopted which is recorded in the recorder's office in zoning file 7. The map again showed Park Avenue in the same location but the ordinance changed the Wadding property from a "B Residential Zone" to a "Local Commercial Zone" and denominated the area about the Wadding property a "C Residence Zone". The northern boundary of the Wadding lands, which was also the southern boundary of Park Avenue, was fixed as the northern boundary of the local commercial zone.

17. In 1955, Charles O. Fobes made an agreement with Guy E. Jay and Lee C. Weaver to sell him his lot including the area of Park Avenue provided they were able to obtain permission of the zoning authorities of the City of New Castle to use the lot as a new and used car lot.

18. In March, 1955, Jay and Weaver, later joined by Charles O. Fobes, applied for permission to use the lot, including the area of Park Avenue, for a used and new car lot and to erect a building for this use. Their application was rejected by the city engineer because such a use and such a building were not permitted in a "C" residential district. The premises were described as 614 Wilmington Avenue.

19. Jay and Weaver appealed to the zoning board of adjustment and that board granted leave to them to use the lot for the purposes stated under certain conditions.

20. Appellants Mario and Helen Frabotta will be damaged and the value of their property depreciated

if the lot of Fobes which adjoins them on the south is used for the sale of used and second hand automobiles.

## Discussion

Two misconceptions as to the matters of law require correction before we come to the main problem in this case. In the first place Frabottas, appellants, believe they have some special right to object to the occupancy by Mr. Fobes of the land which lies within the area marked "Park Avenue" on the zoning map. This right might arise because of the dedication of the street by a previous owner or because of the ordination and appropriation of the street by the public authorities. Neither condition is found here.

There is no evidence of any plot laid out by Joseph S. White. His deed to Gilfillan, through which Frabottas claim, contains no mention of a plot. To be sure White's executors protected their estate by excepting and reserving all streets and alleys dedicated or ordained and the rights of all persons who had bought lands by reference to streets and alleys, but none of this applies to Frabottas. The area of Park Avenue was not dedicated by White and the deeds in Frabottas' chain of title contain no reference to the street.

Next, was the street ordained? It was ordained by ordinance 3968 on February 18, 1927, but this ordinance was repealed by ordinance 4060 adopted September 9, 1927. The Frabottas contend that ordinance 4060 was not enacted with the formality required by the Act of May 17, 1921, P. L. 844, 53 PS §553, but in Kunze v. Duquesne City, 126 Pa. Superior Ct. 43, it was held that the Act of May 16, 1891, P. L. 75, of which the Act of 1921 is an amendment, was repealed by the Third Class City Act of June 23, 1931, P. L. 932. In any event an ordinance to repeal an ordinance opening a street before the street is actually opened is not a proceeding to vacate a street within the meaning of the Act of 1921.

Appellants confuse the mere location of a street with the ordination and opening of a street. The Act of June 23, 1931, P. L. 932, paragraphs 2901-2906, inclusive, and the amendment of June 28, 1951, P. L. 662, 53 PS §§12198-2901 to 2906, inclusive, deal with the location of a street by showing it on an official city map. The cases cited by appellants seem to miss this distinction. In Commonwealth v. McNaugher, 131 Pa. 55, 61, the street was ordained by act of the legislature. In Commonwealth v. Moorehead, 118 Pa. 344, the land was dedicated by the owner for street purposes. In South Twelfth Street, 217 Pa. 362, the street was laid out, used and then disused for 40 years. These cases are not in point. When all the municipality has done is to locate the street on a map the only result is that if the neighboring owner thereafter builds within the line of the street, he cannot recover for his improvement: section 29, Act of 1951, 53 PS §12198-2906.

All of this means that so far as the existence of Park Avenue is concerned, appellants have no right to stop Mr. Fobes in this proceeding from using it. Fobes' deed from Gilfillan conveyed the street to him. He seems to have been claiming it. Section 29 of the Act of 1951, 53 PS §12198-2905, allows the owner full use of his land until the municipality claims it for a street. In the light of this legislation the stipulation imposed by the zoning board of appeals requiring Jay and Weaver to build within the street line does not seem prudent. They might have to take the building down.

Next as to the misconception by the board. The board construed section 202 of the Zoning Ordinance of 1951 as providing that where a street is on the boundary of a zone the center of the street is the boundary. The section is as follows:

"District Boundaries. The boundaries between districts are, unless otherwise indicated, either the center

lines of streets or railroad rights-of-way, or such lines extended or lines parallel or perpendicular thereto. Where figures are shown on the Zoning Map between a street and a district boundary line, they indicate that the district boundary line runs parallel to the street line at a distance therefrom equivalent to the number of feet so indicated."

Appellant's exhibt 5, the large zoning map, shows clearly that the north line of Wadding's property and the south line of Park Avenue is the boundary of the zone. All section 202 provides is that a zone line must be the center line of the street, a line parallel with it or a line perpendicular to it. The thing to be avoided is lines crossing at an angle. Most of the boundary lines between zones as shown in the zoning maps are not the center lines of streets.

The question which lies at the heart of this case is whether the board of adjustment had authority to grant the variance which they granted. Obviously from what has been said the board had no authority to move the boundary line of the local commercial zone in which the Wadding lot was located 25 feet to the north to the center line of Park Avenue. Since they would not do this, their reasoning that part of the Fobes lot was in the local commercial zone and, therefore, all might be placed in that zone must fall also. Furthermore appellees cannot argue that there is a street so far as delimiting the zone is concerned and that thereafter there is no street.

The sole remaining question is whether the board had authority to extend the uses permissible in a "C Residence Zone". Article V, item 501 (5) of the zoning ordinance allows as a permissible use: "Motor Vehicle parking lot, provided that any light used to illuminate such a parking area shall be arranged so as to reflect the light away from adjoining residences". Appellees argue that the use of the lot as a new and used car

lot "is substantially the equivalent" of using it as a parking lot. The ordinance says, however, that the named uses are to be permitted "and no other".

A parking lot is not the equivalent of a lot for the sale of new and used automobiles. In the "C Residence Zone" in which the Fobes lot was placed, apartment hotels, tourist houses, clubs and lodges are permitted. Obviously parking, other than on the public street, is very desirable in connection with these uses. But no retail stores are allowed in this zone. A new and used car lot is a place for making sales. In the list of permitted uses for a "Local Commercial District" item 14 is as follows:

"The following uses, provided that all facilities shall be located, and all services shall be conducted, within the confines of the lot, and all repair work shall be conducted within a building:

"a. Motor vehicle service station.

"b. Public garage.

"c. Motor vehicle parking lot.

"d. Motor vehicle sales agency."

It should be noted how carefully council hedged about the use of land for the sale of automobiles even in a zone devoted to local business. The sale of used automobiles may easily pass into the sale of parts of used automobiles with all the abuses incident thereto. Sound reasons were back of the distinction drawn by council between a parking lot and a new and used car lot.

In any event it was not the province of the board to change the ordinance. This court must accord full weight to the decisions of the board, an administrative board but entrusted with important decisions involving discretion: Berman v. Exley, 355 Pa. 415. But the Berman case is also authority for the proposition that where the board has suffered from a mistake of law. the courts will interfere.

The board, due to a mistake of law concerning the meaning of section 202 of the ordinance, ruled that the northern boundary of the local business zone in which the Wadding service station is located is the center of Park Avenue. Section 202 does not say this at all and the general practice of the zoning authorities has been not to make the center lines of streets boundaries of zones. The board has no authority, by granting a variance, to change the boundary of a zone, only council may do that: 8 McQuillin Municipal Corporations (3rd Ed.) §25.174, page 307; Bray v. Beyer, 292 Ky. 162, 166 S. W. 2d 290; Brackett v. Board of Appeal, 311 Mass. 52, 39 N. E. 2d 956.

The board has suffered under another mistake of law. It assumes the power to add to the uses permitted in a zone. This must be corrected. The board argues that there is no real difference between using a lot for a parking lot and for a new and used car lot. Therefore, reasons the board, a variance may be granted. But the council has established these uses and made them separate. Only the council can change them: Devereux Foundation, Inc., Zoning Case 351 Pa. 478.

The application in this case at bar was really for rezoning of the Fobes lot. Rezoning may not be granted by allowing a variance: Lukens v. Ridley Twp. Zoning Board of Adjustment, 367 Pa. 608, 613. In Catholic Cemeteries Ass'n, etc., Zoning Case, 379 Pa. 516, this principle was affirmed. There, as here, applicants had sought rezoning and, failing to obtain it, applied for a variance.

Mr. Fobes is still not without a remedy. If, as appears, the city no longer insists upon the continuance of Park Avenue at the point in question he might easily perfect his title to the whole lot. He might again apply for rezoning of his property. The mere possibility of financial loss is not enough to warrant a variance:

Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582.

## Conclusions of Law

1. Lacking evidence of a dedication by a former owner of land for a street, the mere locating of a street on a city map gives an adjoining owner no right to insist upon keeping the street open.

2. As long as a street in a third class city has not been actually opened on the ground an ordinance repealing an ordinance which ordained a street need not be passed with the same formality as an ordinance for the vacation of a street.

3. Section 202 of the zoning ordinance in this case does not make the center lines of streets the necessary or preferred lines of zones.

4. When the zoning board of adjustment has misconstrued a section of the zoning ordinance and allowed a variation based on this misconstruction and when it has also assumed the power to decide that a use prohibited in one zone but permitted in a less exacting zone is essentially the same use as a more burdensome use in the first zone, the board has acted upon errors of law and its action must be reversed.

## Decree Nisi

Now this October 21, 1955, the order of the Zoning Board of Adjustment of the City of New Castle allowing a variance is reversed and the order of the city engineer refusing the permit is reinstated. The costs are placed upon the City of New Castle.

This order shall become final unless exceptions are filed to it within 20 days.

BRAHAM, P. J., December 20, 1955.—This case is before the court en banc upon exceptions to an order of this court dated October 21, 1955, sustaining the appeal of Mario and Helen Frabotta from a decision of the New Castle Zoning Board of Adjustment which

allowed Guy E. Jay and Lee C. Weaver to use the lot of land south of appellants' property for the sale of new and second hand automobiles, contrary, as appellants have urged, to the provisions of the zoning ordinance.

As the case was argued before the court en banc it was presented as a case where the board of adjustment had allowed a variance to Charles O. Fobes because of the special hardship placed upon him by strict application of the zoning law. To this contention the attorney for the Frabottas made an effective rejoinder by pointing out that the board of adjustment was on record as deciding that this was not a case for a variance. Upon examination this is found to be correct. At trial the Frabottas offered the formal return to the court made by the zoning board of adjustment. It was admitted in evidence.

Upon examination of the record it appears that when the problem posed by this appeal came before the board of adjustment the board recommended to city council that the ordinance be amended to zone the lot as "local Commercial" instead of "C Residence" or that the city buy the lot for street purposes. In connection with the report of this decision the chairman of the zoning board in a letter dated March 23, 1955, said the following:

"2—For three basic reasons the Board cannot grant a variance in the use; (a) as set forth in the Report of the Board's Decision, a copy of which is enclosed, the Zoning Map, an integral part of the Ordinance, shows a street where the property in question is located, so that actually the Board, bound by what the Map indicates, does not know the Zoning Classification of the lot in question; (b) even assuming the lot to be in a C Residence Zone, appellants cannot make out a case for variance, which requires an element of hardship in the sense of the Ordinance; and (c) though the

Board would like to grant a variance on the basis that such use would not be detrimental to the community interests, by the rules the Board follows it is stated that such a basis 'does not mean that the Board has authority to grant any variance believed to be in the best interests of the community' without other, and particularly 'hardship', elements being present."

The decision of the zoning board was clearly based upon certain misapprenhensions of the law regarding the extension of Park Avenue shown on the map and the determination of the zone lines with reference to the street. This subject is fully discussed in the adjudication.

This court appreciates the situation of Mr. Fobes, the owner of the lot. His counsel have well pointed out the process, constantly going on, by which the nature of various areas of the city gradually changes, most commonly passing from purely residential to business and then to industrial. An article by Lewis H. Van Dusen, Jr., in the January 1954 issue of the Pennsylvania Bar Association cited by counsel is illuminating on this point. This point of view is relevant here.

However, equally important is an attitude of firmness on the part of the zoning board and on the part of the court. There can be no zoning without hurting someone. Each case can be presented as a case of such financial hardship that a variance is required. Furthermore the court must avoid putting itself in the position of legislator in these matters. It is the council which must delimit the variance zones and decree their uses. For the court in this instance to step in, override the very reasoning which led the zoning board to its conclusion and decree a general variance when the board said no grounds for a general variance existed would be an assumption to the court of a power which it does not have. It would be a decision of the court that the process of change in the zone has gone on so far that

the court must assist and accelerate the change. As a matter of fact there is only the one gas station nearby and has been only one. Let the council decide when the time for a change has come.

The exceptions to the findings of fact are without merit except the second which relates to the 15th finding. This contains a statement that the Wadding Service Station did not conform to the zoning ordinance when it was erected. This is not proved by the evidence.

Entertaining these views we make the following

*Order*

Now, December 20, 1955, defendants' exceptions nos. 1 to 7, inclusive, are each severally overruled and refused except that the 15th finding of fact is modified by striking out the last sentence thereof.

The decree nisi is entered as a final decree.

Now, December 20, 1955, an exception is sealed to the above order for defendants.